NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-820

COMMONWEALTH

vs.

DAVIO M. VARDAMIS-HENRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a motor vehicle stop in June of 2021, the defendant, Davio M. Vardamis-Henry, was charged with several crimes, including operating a motor vehicle with a suspended license and improper storage of a firearm (improper storage). After a trial, a District Court jury found the defendant guilty of both crimes.[1] On appeal, the defendant challenges both

---

[1] The jury also convicted the defendant of carrying of a firearm without a license and unlawful possession of ammunition, but those convictions were vacated under the Second Amendment to the United States Constitution following the Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), and the Supreme Judicial Court's subsequent decision in Commonwealth v. Donnell, 495 Mass. 471 (2025).

convictions based on the sufficiency of the evidence.  We affirm.

Background.  Just after 3 P.M. on June 17, 2021, Massachusetts State Police Trooper Randy Morales was on duty patrolling Route 495 in heavy traffic.  As Morales drove next to the defendant's car, he noticed that the defendant was not looking at the road or holding the steering wheel.  Instead, the defendant was looking downward and typing on the screen of his mobile phone with both hands.  Because that conduct is a civil motor vehicle infraction, Morales initiated a traffic stop.  The defendant pulled over quickly and without incident.

Morales approached the defendant's car and spoke with him.  The defendant was alone in the car with his dog, who was moving around the front passenger compartment.  Morales asked the defendant for his driver's license.  The defendant eventually found his Maine driver's license and gave it to Morales.  Morales ran a criminal justice information system query on the Maine license and found it to be active, but that query also revealed that the defendant held a Massachusetts driver's license which was suspended for failure to pay outstanding fines.

Morales informed the defendant that he was calling for a tow truck.  Once the tow truck arrived, Morales asked the

2

defendant to step out of the car and offered him and his dog a ride off the highway in the police cruiser. The defendant got out of his car as instructed, leaving his backpack in the car. Morales then asked the defendant to gather any personal belongings from his car before it was towed. The defendant asked to retrieve his backpack from the front passenger floor of his car, and Morales opened the car door for him to do so. When he opened the door, Morales looked inside and observed the barrel of a firearm protruding from a backpack on the front passenger floor. Morales placed the defendant in handcuffs and seized the backpack with the firearm inside. The defendant told Morales that he had forgotten about the firearm in his backpack, and that he kept it to protect his dog. When asked, the defendant reported that he did not have a license to carry a firearm in Massachusetts. Morales then arrested the defendant for carrying a firearm without a license.

During the booking process, the defendant gave Morales his home address on a specific street in Bangor, Maine. Morales testified that the house number was "43," but the defendant's registry of motor vehicles (RMV) records reflect that it was "48."[2] The Commonwealth introduced those RMV records to prove

_____

[2] It is unclear whether Morales simply misspoke at trial, especially because the prosecutor asserted in her closing argument that the defendant's stated address matched his RMV

3

that the defendant's license was suspended, and that he had received notice of his suspension at his home address in Maine.

In support of a conviction of carrying a firearm without a license, the prosecutor repeatedly emphasized that the firearm was (1) easily accessible, and (2) under the defendant's control. In support of a conviction of improper storage of a firearm, the prosecutor emphasized that (1) it was not in a locked container, (2) it was easily accessible, and (3) it was not separate from any ammunition. The defendant argued that the Commonwealth could not prove that he knew about the firearm, and that he was in compliance with the firearm laws in his home State of Maine.

The jury found the defendant guilty of carrying a firearm without a license, possession of ammunition without a firearm identification (FID) card, improper storage of a firearm, and operating a motor vehicle after a license suspension.[3]

Discussion. 1. Improper storage. The defendant argues that the Commonwealth failed to prove the improper storage charge beyond a reasonable doubt because the prosecutor failed

---

records, and defense counsel did not note a discrepancy in the reported address.

[3] As noted above, the defendant's convictions of possession of ammunition and carrying a firearm were vacated on Second Amendment grounds and are not before us for review on appeal.

4

to establish one of the essential elements of that crime: that the firearm was not under his immediate control. We disagree.

Where the defendant challenges the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

In order to obtain a conviction of improper storage, the Commonwealth must prove beyond a reasonable doubt that the defendant kept or stored a firearm, and that the firearm was neither "secured in a locked container [n]or equipped with a tamper-resistant mechanical lock or other safety device" and was not "carried by or under the control of the owner." G. L. c. 140, § 131L (a). See Commonwealth v. Reyes, 464 Mass. 245, 251 (2013); Commonwealth v. McGowan, 464 Mass. 232, 243 (2013) ("the obligation to secure a firearm in § 131L (a) applies only where the gun owner chooses not to carry a firearm or keep it under his immediate control"). Therefore, the Commonwealth must prove that the firearm was not carried by or under the immediate control of the owner. "[A] firearm is within the 'control' of its owner or authorized user only when that person has it

5

sufficiently nearby to prevent immediately its unauthorized use." Commonwealth v. Patterson, 79 Mass. App. Ct. 316, 319 (2011).

The defendant argues that the Commonwealth failed to satisfy its burden to prove that the firearm was not within his control so as "to prevent immediately its unauthorized use" when he stepped out of the car. Specifically, he asserts that he was never far from the firearm and the only other person in the vicinity of the firearm was Morales. In fact, when the defendant got out of the car, he was on the driver's side and Morales was standing between him and the open driver's door. The firearm was in a backpack on the front passenger floor. Also, the tow truck driver had arrived at the scene to tow the defendant's car away. Finally, Morales testified that the defendant "asked me if he could retrieve a backpack," and "seemed very adamant to retrieve it." Considering the evidence in the light most favorable to the Commonwealth, this evidence was sufficient to permit the jury to find that the firearm was not within the defendant's control so as "to prevent immediately its unauthorized use" at the point when he stepped out of his car. See Patterson, 79 Mass. App. Ct. at 319.

Alternatively, the defendant argues that the Commonwealth is precluded from arguing that the firearm was not in his

6

control because the trial prosecutor argued exclusively that the firearm was under the defendant's control, in support of a conviction of the unlawful firearm possession charge. Indeed, the prosecutor made no effort at trial to explain how the defendant had control of the firearm for purposes of the possession charge, but not for purposes of the improper storage charge. See Commonwealth v. Cantelli, 83 Mass. App. Ct. 156, 171-172 (2013) (distinguishing "control" for storage statute purposes from "control" element of possession charges).

However, the judge properly instructed the jury that in order to convict the defendant of improper storage, they had to find that "the defendant was not carrying the firearm, or did not have the firearm under his immediate control." We presume that the jury followed the judge's instructions. See Commonwealth v. Silva, 482 Mass. 275, 290 (2019). Therefore, because the jury found the defendant guilty of improper storage, we may infer that they found that at some point during the interaction with Morales, "the defendant was not carrying the firearm, or did not have the firearm under his immediate control." Again, because the evidence taken in the light most favorable to the Commonwealth supported such a finding (i.e.,

the firearm was not in the defendant's control when he stepped out of the car), there was no error.[4]

2. Operation after suspension. In order to obtain a conviction of operation of a motor vehicle with a suspended license, the Commonwealth must prove three elements: (1) that the defendant operated a motor vehicle; (2) that the defendant's license was suspended at the time of operation; and (3) that the defendant had received notice that his license had been suspended. See Commonwealth v. Royal, 89 Mass. App. Ct. 168, 170 (2016), citing G. L. c. 90, § 23.

---

[4] In a recent opinion, the Supreme Judicial Court reaffirmed that "when the Commonwealth puts forward a particular theory at trial, the Commonwealth's '[a]rguments on appeal must be based on [that] theor[y],' not any new theory." Commonwealth v. McGrath, 497 Mass. 369, 373 (2026), quoting Commonwealth v. Lee, 460 Mass. 64, 67 n.3 (2011). The defendant asserts that because the Commonwealth argued that the firearm was in the defendant's control inside the car but failed to argue that the firearm was not within his immediate control when he stepped out of the car, this principle precludes the Commonwealth from relying on such evidence on appeal to preserve the improper storage conviction. The short answer is that the prosecutor made no argument at trial about whether the firearm was in the defendant's immediate control when he stepped out of the car and therefore, the Commonwealth was free to argue on appeal that the firearm was not in his immediate control at that point. See McGrath, supra at 374 (affirming conviction because prosecutor did not present any theory about crime defendant intended to commit when she entered victim's home and therefore, was not precluded, on appeal, from advancing theory about crime defendant intended to commit).

a.  Notice.  The defendant argues that the evidence was insufficient to satisfy the notice requirement because the Commonwealth failed to prove that he was the same Davio Vardamis-Henry who was addressed in the RMV notice of suspension.  He relies on the fact that Morales testified that the defendant provided an address during booking that did not match the address in the defendant's RMV records.

In an operation after suspension case, "[t]he element of notice can be proved by evidence . . . of proper mailing of a notice of suspension by the RMV."  Commonwealth v. Cueva, 94 Mass. App. Ct. 780, 787 (2019).  "The Commonwealth need not prove that the defendant in fact received the notice[;] . . . proof that the RMV properly mailed a notice is sufficient."  Id.

Here, the RMV records establish that the RMV sent notice via United States mail to Davio Vardamis-Henry indicating that the RMV intended to suspend his driver's license for nonpayment of fines.  The jury were permitted to consider the defendant's "unusual" name when determining whether the Commonwealth had proven identity.  Commonwealth v. Dussault, 71 Mass. App. Ct. 542, 547 (2008) (Commonwealth satisfied its burden to prove defendant was same person listed in conviction records; among other factors, judge properly "took into account the fact that the defendant's last name was an unusual one").  The defendant

9

has a hyphenated name, which matches the name on the proffered RMV records. The defendant also provided a home address during booking which matched the street, town, and State listed in the RMV records for the address of Davio Vardamis-Henry. Finally, Morales identified the defendant in court as the person he arrested after the traffic stop on June 17, 2021. Taken together, that evidence was sufficient to permit the jury to find that the defendant was the same Davio Vardamis-Henry to whom the RMV had sent the notice of license suspension. See Latimore, 378 Mass. at 676-677; Cueva, 94 Mass. App. Ct. at 787.

b. RMV records. The defendant also argues that the RMV records constituted testimonial hearsay, and thus, the judge erred by admitting them in evidence without live testimony from the employee who prepared them. Because trial counsel did not object to the admission of these records, we determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Azar, 435 Mass. 675, 686-687 (2002).

Testimonial hearsay includes any out-of-court statement with a primary purpose to "establish or prove past events potentially relevant to later criminal prosecution" (citation omitted). Michigan v. Bryant, 562 U.S. 344, 356 (2011). The confrontation clause of the Sixth Amendment to the United States

10

Constitution bars the admission of "testimonial statements" of an absent witness unless they are "unavailable to testify, and the defendant ha[s] had a prior opportunity" to cross-examine them. Crawford v. Washington, 541 U.S. 36, 53-54 (2004).

The RMV records at issue in this case include the defendant's driving history, notices of his impending license suspension, and a letter from the Registrar of Motor Vehicles to the district attorney's office certifying the records' authenticity. A defendant's RMV records, including a full driving history and notices of suspension, are not testimonial because they are "maintained independent of any prosecutorial purpose and are therefore admissible in evidence as ordinary business records under G. L. c. 233, § 78, as well as pursuant to G. L. c. 233, § 76" (citation omitted). Royal, 89 Mass. App. Ct. at 173. See Commonwealth v. Martinez-Guzman, 76 Mass. App. Ct. 167, 171 n.3 (2010). See also G. L. c. 90, § 30 (providing for admissibility of certified copies of registry records).

The defendant cites the Supreme Judicial Court's decision in Commonwealth v. Parenteau, 460 Mass. 1, 8 (2011), in support of his argument that the Registrar's certificate of authenticity was testimonial in nature. The Commonwealth concedes on appeal that it was error to admit this letter without redacting the Registrar's statement "that there has since been no

11

reinstatement of his/her license or right to operate motor vehicles in the Commonwealth of Massachusetts." The parties agree that this portion of the Registrar's attestation should have been redacted, as it was an out-of-court testimonial statement admitted in violation of the confrontation clause. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 322 (2009) (clerk had "no authority to furnish, as evidence for the trial . . . , his interpretation of what the record contains or shows, or to certify to its substance or effect" [citation omitted]).

The Commonwealth contends, however, that this error did not create a substantial risk of a miscarriage of justice where there was sufficient independent evidence that the defendant's license was suspended when the traffic stop occurred. We agree. Parenteau, 460 Mass. at 10, makes clear that "the actual notice of [a] defendant's license revocation . . . constitutes a business record of the registry, created and kept in the ordinary course of its affairs." Because "[r]egistry records of driver history are not 'testimonial,'" they do not raise confrontation clause concerns. Royal, 89 Mass. App. Ct. at 173. And "mailing confirmation records . . . now maintained by the registry in response to the Parenteau decision . . . [are] properly admitted as evidence that the registry mailed, and prima facie evidence that the defendant received, the notices of

intent to suspend his license."  Royal, supra at 174.  Where properly admitted evidence independently demonstrated that the defendant's license was suspended on the date of the traffic stop, the admission of the Registrar's certification of its substance did not create a substantial risk of a miscarriage of justice.  See Commonwealth v. Brazie, 66 Mass. App. Ct. 315, 319 (2006).

Judgments affirmed.

By the Court (Desmond, Tan & Wood, JJ.[5]),

Clerk

Entered:  July 9, 2026.

---

[5] The panelists are listed in order of seniority.

13